1  DAVID A. JAKOPIN (SBN 209950)
2  david.jakopin@pillsburylaw.com
   MATTHEW W. HINDMAN (SBN 247707)
3  matthew.hindman@pillsburylaw.com
4  MONICA A. HERNANDEZ (SBN 280195)
   monica.hernandez@pillsburylaw.com
5  **PILLSBURY WINTHROP SHAW PITTMAN LLP**
6  2550 Hanover Street
   Palo Alto, CA 94304-1115
7  Telephone:  650-233-4500
8  Facsimile:   650-233-4545

9  CALLIE A. BJURSTROM (SBN 137816)
10 callie.bjurstrom@pillsburylaw.com
   **PILLSBURY WINTHROP SHAW PITTMAN LLP**
11 501 West Broadway, Suite 1100
12 San Diego, CA 92101-3575
   Telephone:  619.234.5000
13 Facsimile:   619.236.1995
14
15 Attorneys for Plaintiff Vector Launch, Inc.
16
17               **UNITED STATES DISTRICT COURT**
               **CENTRAL DISTRICT OF CALIFORNIA**
18
19

| | |
|---|---|
| 20 **VECTOR LAUNCH, INC., a Delaware Corporation** | **CASE NO.** |
| 21 | **COMPLAINT FOR PATENT INFRINGEMENT** |
| 22          Plaintiff, | |
| 23 v. | **DEMAND FOR JURY TRIAL** |
| 24 **LOCKHEED MARTIN** | |
| 25 **CORPORATION, a Maryland Corporation**. | |
| 26 | |
| 27          Defendant. | |

28

- 1 -
COMPLAINT

Plaintiff Vector Launch, Inc. ("Vector"), by and through its attorneys, Pillsbury Winthrop Shaw Pittman LLP, brings this Complaint against Defendant Lockheed Martin Corporation ("Lockheed"), asserting claims and damages for patent infringement.  This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a).  In support of this action, Vector alleges as follows:

**NATURE OF THE ACTION**

1.     This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, specifically including 35 U.S.C. § 271.

**THE PARTIES**

2.     Plaintiff Vector is a corporation organized under the laws of the State of Delaware with an engineering facility located at 15261 Connector Lane, Huntington Beach, California 92649, and a sales and marketing headquarters located at 100 Century Center Court, Suite 400, San Jose, California 95112.

3.     Upon information and belief, Defendant Lockheed is a corporation organized under the laws of the State of Maryland, having offices located throughout this judicial district, including at 1011 Lockheed Way, Palmdale, California 93599; 2550 N. Hollywood Way, Burbank, California 91505; 2401 E. El Segundo Blvd. #6th, El Segundo, California 90245; 200 N. Westlake Blvd., Thousand Oaks, California 91362; 17100 Murphy Ave., Irvine, California 92614; 3201 Airpark Dr. # 202, Santa Maria, California 93455; and 346 Bollay Dr., Goleta, California 93117.  On information and belief, Lockheed does substantial business on an ongoing basis in the State of California and in this judicial district.

**JURISDICTION AND VENUE**

4.     This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 (jurisdiction over federal questions) and 1338(a) (jurisdiction over civil actions arising under any act of Congress relating to patents).

5.     This Court has personal jurisdiction over Lockheed because it conducts business in the State of California and specifically, in this judicial district.  Through its numerous operations, Lockheed has purposefully availed itself of the privileges and protections of doing business in the State of California and in this judicial district.

6.     Vector's causes of action arise, at least in part, from Lockheed's business contacts and activities in this judicial district and elsewhere in the State of California.  Lockheed has committed acts of infringement within this district and within California by making, using, selling, offering for sale, distributing and advertising products that infringe the asserted patents as set forth below.

7.     Venue is proper within this judicial District under 28 U.S.C. §§ 1391 and 1400.

## FACTUAL BACKGROUND

8.     Founded in 2016, Vector Launch, Inc. (formerly Vector Space Systems) is a key player in revolutionizing micro space platforms for access to space applications.  The company is a disruptive space innovator focused on developing a new generation of space technology that allows satellites to be programmed and dynamically re-programmed to change their missions in orbit.

9.     Upon its launch in 2016, Vector received $1 million in seed funding, and an additional $21 million the following year from very prominent venture investment firms in Silicon Valley, including Sequoia Capital, Lightspeed Venture Partners, and Shasta Ventures.  In addition, soon after its launch, Vector signed a $60 million deal with York Space Systems to launch six satellites into orbit.

10.     In 2016, Vector announced the launch of its new software-defined satellite platform "GalacticSky" at the Space Technology & Investment Forum in San Francisco, California.   GalacticSky provides enhancements for dynamically deploying and re-programming software applications for satellites

**COMPLAINT**

already in orbit in near real-time.  This enables access to a much larger pool of users/customers to explore and experiment.  These enhancements include software design tools for space applications and data management, cloud-based space network simulation services, and a full suite of application programming interfaces supporting robust and efficient software development and testing for commercial, government, and industrial space applications without the traditional costs and time to market associated with developing their own satellites or paying for a rocket launch.  This capability, in conjunction with Vector's satellite launch systems, offers a complete vertically integrated solution for software companies and innovators to bring their unique ideas and applications to a space platform.

11.    Each application can be deployed on the processing resources of one or multiple satellites and executed as a separate virtual node.  Each virtual node may include a full virtual machine capable of sharing resources from an underlying operating system.  Additionally, instead of having a hardwired device that can only do what it was built to do when the satellite was first launched, GalacticSky's software architecture can be reprogrammed in orbit to take on new missions at any point in the software lifecycle by a simple upload.

12.    These technological developments by Vector are protected by patents issued by the United States Patent and Trademark Office.  The growth of Vector's patent portfolio is at least part of the bases for investment into Vector through venture capital and other investment vehicles.

**PATENTS-IN-SUIT**

13.    U.S. Patent No. 9,641,238 ("the '238 Patent"), entitled "Virtualization-Enabled Satellite Platforms," was issued by the United States Patent and Trademark Office on May 2, 2017.  Vector is the owner by assignment of the entire right, title, and interest in and to the '238 Patent, and possesses the sole, exclusive, and undivided right to sue for patent infringement and collect

**COMPLAINT**

damages for past and future infringement. A true and correct copy of the '238 Patent is attached hereto as Exhibit A.

14.     U.S. Patent No. 9,876,563 ("the '563 Patent"), entitled "Virtualization-Enabled Satellite Platforms," was issued by the United States Patent and Trademark Office on January 23, 2018. Vector is the owner by assignment of the entire right, title, and interest in and to the '563 Patent, and possesses the sole, exclusive, and undivided right to sue for patent infringement and collect damages for past and future infringement. A true and correct copy of the '563 Patent is attached hereto as Exhibit B.

15.     U.S. Patent No. 10,250,319 ("the '319 Patent"), entitled "State Transfer Among Satellite Devices," was issued by the United States Patent and Trademark Office on April 2, 2019. Vector is the owner by assignment of the entire right, title, and interest in and to the '319 Patent, and possesses the sole, exclusive, and undivided right to sue for patent infringement and collect damages for past and future infringement. A true and correct copy of the '319 Patent is attached hereto as Exhibit C.

16.     The '238 Patent, '563 Patent, and '319 Patent are herein collectively referred to as the "Patents-in-Suit."

**Lockheed's Infringing Products**

17.     On information and belief, Lockheed's "SmartSat" software platform adapted for processing software payloads for programming or reprogramming satellites in orbit, infringes the Patents-in-Suit, as described more fully below. On information and belief, and based on Lockheed's March 20, 2019 press release, the SmartSat software platform is configured on certain of Lockheed's satellites that are planned for launch this year, whether or not released at the time of the filing of this Complaint.

18.     On information and belief, at least certain of Lockheed's LM 50 nano-satellites ("nanosats"), including the "Linus" and "Pony Express" nanosats

and any other nanosats that are not colorably different from each other, incorporate the SmartSat software architecture which infringes the Patents-in-Suit, as described below.  On information and belief, and based on Lockheed's March 20, 2019 press release, these nanosats are planned for launch this year, whether or not released at the time of the filing of this Complaint.

19.    The Lockheed SmartSat software platform and the nanosats on which it is implemented are collectively referred to in this Complaint as the "Lockheed Accused Products".

**CAUSES OF ACTION**

**COUNT I**

**Infringement of U.S. Patent No. 9,641,238**

20.    Vector hereby restates and re-alleges the allegations set forth in paragraphs 1-19 above as though fully set forth herein.  The '238 Patent is directed to applications deployed on one or more satellites "capable of execution as virtual nodes on the satellite." '238 Patent, abstract.  On information and belief, in violation of 35 U.S.C. § 271, Lockheed is infringing the '238 Patent, either literally or under the doctrine of equivalents, by, among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed systems and products in a manner that infringes at least claims 1-2, 4-7, 9-13, 15-17 and 19-20 of the '238 Patent.

21.    On information and belief, Lockheed has directly infringed the '238 Patent, for example, by making, using, selling, offering to sell, and/or importing into the United States the Lockheed Accused Products, which meet each and every limitation of claims 1-2, 4-7, 9-13, 15-17 and 19-20 of the '238 Patent, in violation of Vector's patent rights and without the authorization of or a license from Vector.  Non-limiting examples of such infringement are provided below, based on the publicly available information currently available to Vector.

22.    Claim 1 of the '238 Patent recites as follows:

- 6 -

**COMPLAINT**

**1.**     A satellite comprising:

**[a]** a communication interface comprising at least a ground communication portion and an inter-satellite communication portion, wherein the communication interface is configured to receive user software payloads;
**[b]** a satellite control system configured to operate logistical control elements of the satellite; and
**[c]** a virtualized execution system configured to execute ones of the user software payloads deployed on the satellite as associated virtual nodes according to at least a resource schedule that indicates timewise allocation of the associated virtual nodes to resources of the satellite.

23.     The Lockheed Accused Products are designed for and used in Lockheed's satellites, including its nano- and micro-satellites, to execute software payloads in orbit.  The Lockheed Accused Products enable users to add or update capabilities to satellites in order to assign new missions to satellites with a software push while the satellites are in orbit.  A stated purpose of the Lockheed Accused Products is to add a SmartSat application to a satellite in-orbit to change the mission.

24.     On information and belief, the Lockheed Accused Products satisfy each and every limitation of Claim 1.  The Lockheed Accused Products include the SmartSat software platform deployed on satellites having communication interfaces for both ground communications and inter-satellite communications among satellites in orbit.  The communication interfaces are adapted to receive user software payloads and to execute them on a hypervisor comprising of one or more virtual machine on one or more satellites.  Lockheed's nanosats are each configured with a satellite control system that operates the logistical and other control elements of the satellite.  The logistical and control elements at least comprise propulsion mechanisms, power regulation, thermal control, reaction wheels, gimbals and more.  Lockheed Accused Products include a hypervisor virtualized execution system that is comprised of one or more containerized virtual machines that enable a computer to process multiple different software payloads that are deployed on one or more satellites in orbit by sharing the

**COMPLAINT**

resources available on the satellite(s).  On information and belief, and based on the understood operations of a hypervisor, the software payloads in the Lockheed Accused Products are executed by scheduling tasks in a time-based manner using one or more instruction schedulers that take into consideration the processing resources available on the satellite(s) during time periods in which those processing resources are available for processing the software packages.

25.     In view of the foregoing, Lockheed's Accused Products directly infringe at least Claims 1-2, 4-7, 9-13, 15-17 and 19-20 of the '238 Patent.

26.     Despite Lockheed's knowledge and notice of the '238 Patent and its ongoing infringement, Lockheed continues to manufacture, use, sell, offer for sale, and/or import the Lockheed Accused Products in a manner that willfully infringes the '238 Patent, and on information and belief continues to sell and offer for sale the Lockheed Accused Products for use in satellites for the United States and international markets.  Lockheed's infringement of the '238 Patent has been willful since service of this Complaint, and earlier based on the meeting conducted between Lockheed and Vector in late 2018.  Lockheed lacks a justifiable belief that it does not infringe the '238 Patent, or that the '238 Patent is invalid or unenforceable, and has acted recklessly in its infringing activity, justifying an increase in the damages to be awarded to Vector up to three times the amount found or assessed, in accordance with 35 U.S.C. § 284.

27.     This case is rendered an exceptional case in light of Lockheed's willful infringement of the '238 Patent, justifying an award to Vector of its reasonable attorneys' fees, in accordance with 35 U.S.C. § 285.

28.     Vector has no adequate remedy at law to address Lockheed's acts of infringement.   As a direct and proximate result of Lockheed's acts of infringement, Vector has suffered and will continue to suffer irreparable harm, unless and until, Lockheed's acts of infringement are enjoined by this Court.

29.    Lockheed's infringement of the '238 Patent has damaged and continues to damage Vector in an amount yet to be determined.   Vector's damages include  at least a reasonable royalty and lost profits that Vector would have made but for Lockheed's infringement.

## COUNT II

## Infringement of U.S. Patent No. 9,876,563

30.    Vector hereby restates and re-alleges the allegations set forth in paragraphs 1-29 above as though fully set forth herein.   The '563 Patent is directed to a satellite system with a "virtualized execution system configured to execute ones of the software payloads deployed on the satellite system as associated virtual nodes that share resources of the satellite system." '563 Patent, abstract.  On information and belief, in violation of 35 U.S.C. § 271, Lockheed is infringing, either literally or under the doctrine of equivalents, by, among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed systems and products in a manner that infringes at least claims 1-3, 5-7, 9-12, 14, 16-18 and 20 of the '563 Patent.

31.    On information and belief, Lockheed has directly infringed the '563 Patent, for example, by making, using, selling, offering to sell, and/or importing into the United States the Lockheed Accused Products, which meet each and every limitation of claims 1-3, 5-7, 9-12, 14, 16-18 and 20 of the '563 Patent, in violation of Vector's patent rights and without the authorization of or a license from Vector.  Non-limiting examples of such infringement are provided below, based on the publicly available information currently available to Vector.

32.    Claim 1 of the '563 Patent recites as follows:

**1.**    A satellite system, comprising:

**[a]** a communication interface configured to receive software payloads for execution by the satellite system;
**[b]** a satellite control system configured to operate logistical control elements of the satellite system; and
**[c]** a virtualized execution system configured to execute ones of the software payloads deployed on the satellite system as associated

**COMPLAINT**

virtual nodes that share resources of the satellite system, and **[d]** transfer the state information over the communication interface for delivery to at least one peer satellite system configured as a backup to the satellite system.

33.     The Lockheed Accused Products are designed for and used in Lockheed's satellites, including its nano- and micro-satellites, to execute software payloads in orbit.  The Lockheed Accused Products enable users to add or update capabilities to satellites in order to assign new missions to satellites with a software push while the satellites are in orbit.  A stated purpose of the Lockheed Accused Products is to add a SmartSat application to a satellite in-orbit to change the mission.

34.     On information and belief, the Lockheed Accused Products satisfy each and every limitation of Claim 1.  The Lockheed Accused Products include the SmartSat software platform deployed on satellites having communication interfaces for both ground communications and inter-satellite communications among satellites in orbit.  The communication interfaces are adapted to receive user software payloads and to execute them on a hypervisor comprising of one or more virtual machines on one or more satellites.  Lockheed's nanosats are each configured with a satellite control system that operates the logistical and other control elements of the satellite.   The logistical and control elements at least comprise propulsion mechanisms, power regulation, thermal control, reaction wheels, gimbals and more.  Lockheed's Accused Products include a hypervisor virtualized execution system that is comprised of one or more containerized virtual machines that enable a computer to process multiple different software payloads that are deployed on one or more satellites in orbit by sharing the resources available on the satellite(s).  On information and belief, and based on the understood operations of a hypervisor, the software payloads in the Lockheed Accused Products are executed by processing resources available on the satellite(s).   Lockheed's nanosats are further configured to maintain state information for transfer to a peer or backup nanosat for fault tolerance.  During

**COMPLAINT**

failover, the state of a failed nanosat is transferred to a backup nanosat via inter-satellite communications.  In addition, for fault tolerance Lockheed has adapted backup nanosats to receive state information, including software payloads, via inter-satellite communications from a failed nanosat and to continue execution of the failed nanosat's payloads on a virtual node on the backup nanosat.

35.    In view of the foregoing, Lockheed's Accused Products directly infringe at least Claims 1-3, 5-7, 9-12, 14, 16-18 and 20 of the '563 Patent.

36.    Despite Lockheed's knowledge and notice of the '563 Patent and its ongoing infringement, Lockheed continues to manufacture, use, sell, offer for sale, and/or import the Lockheed Accused Products in a manner that willfully infringes the '563 Patent, and on information and belief continues to sell and offer for sale the Lockheed Accused Products for use in satellites for the United States and international markets.  Lockheed's infringement of the '563 Patent has been willful since service of this Complaint, and earlier based on the meeting conducted between Lockheed and Vector in late 2018.  Lockheed lacks a justifiable belief that it does not infringe the '563 Patent, or that the '563 Patent is invalid or unenforceable, and has acted recklessly in its infringing activity, justifying an increase in the damages to be awarded to Vector up to three times the amount found or assessed, in accordance with 35 U.S.C. § 284.

37.    This case is rendered an exceptional case in light of Lockheed's willful infringement of the '563 Patent, justifying an award to Vector of its reasonable attorneys' fees, in accordance with 35 U.S.C. § 285.

38.    Vector has no adequate remedy at law to address Lockheed's acts of infringement.    As a direct and proximate result of Lockheed's acts of infringement, Vector has suffered and will continue to suffer irreparable harm, unless and until, Lockheed's acts of infringement are enjoined by this Court.

39.    Lockheed's infringement of the '563 Patent has damaged and continues to damage Vector in an amount yet to be determined.    Vector's

damages include at least a reasonable royalty and lost profits that Vector would have made but for Lockheed's infringement.

## COUNT III

### Infringement of U.S. Patent No. 10,250,319 ("the '319 Patent")

40.     Vector hereby restates and re-alleges the allegations set forth in paragraphs 1-39 above as though fully set forth herein.   The '319 Patent is directed to a satellite system with a virtualized execution system.   "The virtualized execution system is configured to receive state information via the communication interface from at least a peer satellite device related to execution of one or more software payloads by … [a] peer satellite device, and execute one or more virtual nodes based at least on the state information." '319 Patent, abstract.  On information and belief, in violation of 35 U.S.C. § 271, Lockheed is infringing, either literally or under the doctrine of equivalents, by, among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed systems and products in a manner that infringes at least claims 1-2, 6-8, 10-11, 15-17, and 19 of the '319 Patent.

41.     On information and belief, Lockheed has directly infringed the '319 Patent, for example, by making, using, selling, offering to sell, and/or importing into the United States the Lockheed Accused Products, which meet each and every limitation of claims 1-2, 6-8, 10-11, 15-17, and 19 of the '319 Patent, in violation of Vector's patent rights and without the authorization of or a license from Vector.  Non-limiting examples of such infringement are provided below, based on the publicly available information currently available to Vector.

42.     Claim 1 of the '319 Patent recites as follows:

**1.**     A satellite device, comprising:

**[a]** a communication interface; and
**[b]** a virtualized execution system configured to:
**[c]** receive task information via the communication interface from at least a further device related to execution of one or more software payloads by the further device; and
**[d]** execute one or more virtual nodes to at least capture and process

**COMPLAINT**

sensor data collected from one or more sensors systems present on the satellite device based at least on the task information.

43.     The Lockheed Accused Products are designed for and used in Lockheed's satellites, including its nano- and micro-satellites, to execute software payloads in orbit.  The Lockheed Accused Products enable users to add or update capabilities to satellites in order to assign new missions to satellites with a software push while the satellites are in orbit.  A stated purpose of the Lockheed Accused Products is to add a SmartSat application to a satellite in-orbit to change the mission.

44.     On information and belief, the Lockheed Accused Products satisfy each and every limitation of Claim 1.  The Lockheed Accused Products include the SmartSat software platform deployed on satellites having communication interfaces for receiving inter-satellite communications from peer satellites in orbit.  The communication interfaces are adapted to receive user software payloads and to execute them on a hypervisor comprising of one or more virtual machines on one or more satellites.  The Lockheed Accused Products include a hypervisor virtualized execution system configured to receive task information from a further device over one or more communications interfaces for execution of software payloads by the further device.  The hypervisor virtualized execution system that is comprised of one or more containerized virtual machines that enable a computer to process multiple different software payloads that are deployed on one or more satellites in orbit by sharing the resources available on the satellite(s).  On information and belief, the Lockheed Accused Products are adapted to execute on one or more virtual nodes for capturing and processing sensor data collected from one or more onboard sensors systems on the satellite device based on the received tasks.

45.     In view of the foregoing, Lockheed's Accused Products directly infringe at least Claims 1-2, 6-8, 10-11, 15-17, and 19 of the '319 Patent.

**COMPLAINT**

46.     Despite Lockheed's knowledge and notice of the '319 Patent and its ongoing infringement, Lockheed continues to manufacture, use, sell, offer for sale, and/or import the Lockheed Accused Products in a manner that willfully infringes the '319 Patent, and on information and belief continues to sell and offer for sale the Lockheed Accused Products for use in satellites for the United States and international markets.  Lockheed's infringement of the '319 Patent has been willful since service of this Complaint, and earlier based on the meeting conducted between Lockheed and Vector in late 2018.  Lockheed lacks a justifiable belief that it does not infringe the '319 Patent, or that the '319 Patent is invalid or unenforceable, and has acted recklessly in its infringing activity, justifying an increase in the damages to be awarded to Vector up to three times the amount found or assessed, in accordance with 35 U.S.C. § 284.

47.     This case is rendered an exceptional case in light of Lockheed's willful infringement of the '319 Patent, justifying an award to Vector of its reasonable attorneys' fees, in accordance with 35 U.S.C. § 285.

48.     Vector has no adequate remedy at law to address Lockheed's acts of infringement.   As a direct and proximate result of Lockheed's acts of infringement, Vector has suffered and will continue to suffer irreparable harm, unless and until, Lockheed's acts of infringement are enjoined by this Court.

49.     Lockheed's infringement of the '319 Patent has damaged and continues to damage Vector in an amount yet to be determined.  Vector's damages include at least a reasonable royalty and lost profits that Vector would have made but for Lockheed's infringement.

## PRAYER FOR RELIEF

WHEREFORE, Vector respectfully requests that this Court enter judgement against Lockheed as follows:

A.     Grant a preliminary and thereafter a permanent injunction restraining and enjoining Lockheed, and all those in privity, concert or

participation with Lockheed, from any and all continued infringement of the Patents-in-Suit.

B.     That each of the Patents-in-Suit has been infringed by Lockheed;

C.     That Lockheed's infringement of the Patents-in-Suit, and each of them has been willful;

D.     An award of damages adequate to compensate Vector for the patent infringement that has occurred, together with prejudgment and post-judgment interest and costs;

E.     An accounting for acts of infringement through the date of the judgment and an award by the Court of additional damages for such acts of infringement;

F.     A permanent injunction against Lockheed from further infringement, or alternatively, an award of ongoing royalties for Lockheed's post-verdict and post-judgment infringement, payable on each product offered by Lockheed that is found to infringe one or more of the Patents-in-Suit, and on all future products that are not colorably different from those found to infringe;

G.     An award of all other damages permitted by 35 U.S.C. § 284, including enhanced damages of up to three times the amount of compensatory damages found;

H.     A finding that this case is an exceptional case and an award to Vector of its costs and reasonable attorneys' fees incurred in this action as provided by 35 U.S.C. § 285; and

I.     Such other relief, including other monetary and equitable relief, as this court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b) and Civil Local Rule 38-1, Vector hereby demands trial by jury on all issues so triable.

/ / /

**COMPLAINT**

1  Dated:  April 5, 2019

Respectfully submitted,

PILLSBURY WINTHROP SHAW
PITTMAN

*/s/ David A. Jakopin*

David A. Jakopin
Attorneys for Plaintiff VECTOR, INC.

**COMPLAINT**